UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

121 DUVAL COMPANY; 126 DUVAL COMPANY d/b/a DUVAL GROUP, INC.; 135 DUVAL COMPANY; 1704 21ST AVENUE, LTD.; 211 DUVAL COMPANY; 407 LOCKSMITHS, INC.; 4140 CANAL STREET, LLC; 420 FRONT STREET, INC.; 423 FRONT STREET CORPORATION d/b/a HARBOUR HOUSE MARKET; 619 DUVAL COMPANY; 621 KEY WEST, INC.; 654 LIMO, INC.; 777 LUCKY ACCESSORIES, INC.; 9029 JEFFERSON, LLC; AA IRIE PERFUME, INC.; ACTION GUTTER, INC.; JOHN J. AHERNE; AHF ROYAL CREST, LLC; KORIN ALKELAI; ALO JEWELERS, INC.; ORLANDO ALO; SOPHIA ALO; AMERICAN TAX SERVICE, LLC; DWAYNE C. ANDERSON d/b/a XTREME KUSTOM TRANSPORT; ANDREWS CONCRETE & HAULING, LLC; SHERI ANDREWS d/b/a S.E.A. CHASE WATERSPORTS AND CREDIT CARD PROCESSING; RANDALL ANTHONY and DONNA ANTHONY; JAMES APPLEMEN; RICKEY ARMBRUSTER; ARNOLD'S AUTO & MARINE REPAIR, INC. d/b/a ARNOLD'S TOWING; AROMA ISLAND'S PERFUME & COSMETICS, INC.; AROMA SCENT OF STYLE, INC.; ART VANDELAY, INC.; ATG TRANSPORTATION, LLC; AUTOWORKS OF DESTIN, LLC; B & R TOWING SERVICE, LLC; BACCUS HOLDINGS, LLC; SIGALIT BALIVEIS; KIM BALLARD; BANNER TIRE KEY WEST, INC; BARAN'S BEACH HOLDINGS, LLC; STACEY BARFIELD;

BAYSHORE HOUSING CORPORATION; BAYTOWNE WHARF NEIGHBORHOOD ASSOCIATION, INC.; BEACH STOP,LLC d/b/a FLORIDA NAIL ART; JUDY BELLENFANT; RUSSELL BERNARD; BEUMER ENTERPRISES, INC.; BIG EASY MEDIA, LLC; MARK BLACKMER, BLACKMER EQUIPMENT, LLC; CHARLES M. BOND; EMORY BRAY; ROBERT C. BRAYMAN; CHARLES BREEN and SALLY BREEN; BUILDERS CHOICE CABINETS, INC.; C & C HOLDINGS, LLC; CALLAWAY MANOR APARTMENTS, LTD; CANAM ASSOCIATES, LLC; CARPENTER FOR LIFE, INC; CARTAYA COMMERCIAL COMPANY, LLC; RICKEY DEAN CARTER; PARADISE ADVENTURES, LLC; DOUGLAS CAUBLE, CELEBRITY OF CLEARWATER, INC. d/b/a FLIPPERS; CELEBRITY OF SAN MARCO, INC.; CELEBRITY OF SAND KEY, INC.; JOSEPH C. CELICO; CELICO CUSTOM BUILDERS, INC.; YING CHEN; CHIANYAI, LLC d/b/a THAI LIFE FLOATING RESTAURANT; CHRISTOPHER KEVIN DAVIS, P.A. d/b/a A AFFORDABLE HEALTH & DENTAL INSURANCE; CITY SEAFOOD & PRODUCE, LLC; COASTAL PRINTING SERVICES, INC; BRAD COBBLE; NISSIM COHEN; SHLOMO COHEN; ZADOK COHEN; CHERYL COLLIER; COLORADO BOXED BEEF COMPANY; VICTORIA COMBS; THOMAS E. COMPANY; CLAUDE COMTOIS; SHARON COOK; CORDOVA COMMUNITY FACILITIES CORPORATION; CORRECT CUSTOM DRYWALL, INC; COTTAGES ON THE GREEN, LLC; HUGH COX; JEFF CRAWFORD; CREATIVE GEMS, INC.; DENNIS CROSS;

JORDAN A. CROSS; THOMAS CROWSON;
CRYSTAL BAY POOLS, LLC; CUSTOM ROD
& REEL OF LIGHTHOUSE POINT, INC.;  D &
R DRYWALL, LLC; D & R WHOLESALE, LLC;
D & M USED CARS, INC. d/b/a DAVIS
MOBILE HOMES; DAVID LEWIS ROOFING
COMPANY;    ROB    DAVIDSON;    DAVIS
PROPERTIES OF NW FLORIDA, INC.; DAVIS-
NUNNERY INDUSTRIES, LLC; DB OF OCEAN
DRIVE ENTERPRISES, INC.; DÉCOR DESIGN
CENTER, INC.; DEEP SPLASH, INC.;  LOUIS
CHRIS DIEHL; DINKINS PROPERTIES, LLC;
DK EMBROIDERY, INC.; WEI TONG DONG;
RANDALL DRABCZUK; DUDE-N-BRAH, INC.
d/b/a HELEN BACK CAFÉ; DUMALA & SON
PAVING CONTRACTORS, INC.;  JOSEPH
DUMALA AND SANDRA DUMALA; SANDRA
DUMALA    and    CHRISTY    ECKERT;    EM
LEASING INTERNATIONAL, LLC; EMERALD
COAST    ASSOCIATES,    INC.;     EMERALD
COAST HOUSING II, INC.; EMERALD GULF
CONSTRUCTION,    LLC;    ENRICHMENT    OF
LIFE, LLC; ENSLEY SQUARE, LLC; ENTRUST
NEW    DIRECTION    IRA,    INC.;    ESUS,    INC.;
EXIST, INC.; ARLENE FELISIMINO; JOSEPH
FELTNER;    JOAN    FITZSIMMONS;       PAUL
FITZSIMMONS;    FLORIDA    FLOORS,    INC.;
SIDNEY    RAFEAL    FLOYD,    JR.;    ALLISON
FORBES;    FOUNDATIONAL    FINANCIAL
SERVICES,       INC.;       FOX       GARDEN
APARTMENTS,       INC.;       FOX       MANOR
APARTMENTS,    LTD;    FRESCHINK,    LLC;
FRISKY-NINETEEN, LLC; GADDIE MARINE,
INC.;       GAME       PALACE,       INC.;       GLIB
ENTERPRISES,    LLC    d/b/a    GULF    BEACH
AUTO    SALES;    GLOBAL    SOUTHERN,    LLC;
JOHN GOLLINGER; PATTI GONZO; WILLIE

GRAHAM; CODY C. GRAY; GREAT FISH
COMPANY; GREATER KEY WEST CHAMBER
OF COMMERCE, INC.; GREEN ACRES
DEVELOPMENT, LLC; CARLINE GREEN;
GROOVY DANCING, INC.; ADRIAN
GURGANIOUS; HAPPILY EVER AFTER IN
KEY WEST, LLC; HAPPY KIDS FOR KIDS,
INC.; KEVIN D. HARPER; SANDRA HASEK;
HEALTH CARE EXCHANGE OF NW
FLORIDA, INC.; HELEN BACK EXPRESS,
LLC; HELIOS ASSET INVESTMENT, LLC;
CHARM HESS; JIMMY HEWITT d/b/a
HEWITT'S PAINT & BODY; HIATUS
PROPERTIES, INC.; HIGH TIDE
DEVELOPMENT, LLC; HOLLAND K. HIGHT
d/b/a ISLAND EQUITY REAL ESTATE; MARY
LEIGH HILLS; ANTHONY HILLS, SR.;
HONAKER AUTOMOTIVE, LLC; LEROY
ROBERT HOPKINS, III; ROY HOWARD;
INSTITUTE OF DIVING, INC.; IPRP, LLC;
ISLAND GEAR LLC d/b/a TOWEL WORLD;
ISLAND INK TATTOO, INC.; RICKY JAMES
d/b/a BEACH HAWG; RICKY JAMES d/b/a R &
T INVESTMENTS; ELIZABETH JANKE;
DONALD JOHNSON d/b/a A & A CONCRETE;
KELLY JONES; PERRY B. JONES; JRA
ARCHITECTS, INC.; JRS MANAGEMENT,
INC.; JULIARD'S PROPERTIES, INC.; DANIEL
KESTER; RANDELL KESTER; KEY WEST
EXTREME ADVENTURES, INC.; THOMAS L.
KLOSTERMAN, JR.; RICHARD KNIGHT.;
KEVIN KRAUS; PATRICK TAYLOR KREIS
d/b/a ALPHACO MARINE CONSTRUCTION;
LAKE GARDEN APARTMENTS, LTD;
MICHAEL A. LANCASTER; GREGORY
LAPLANTE; THOMAS LAPLANTE; LE TRE
SORELLE, INC.; LENDERMAN DRYWALL,

INC.; MORRIS LOVELAND d/b/a CHICK-FIL-A; LUTHER'S PONTOON & JET SKI RENTALS, INC.; M & D OF DESTIN, LLC; MAJESTIC ROOFING & RESTORATION COMPANY, INC.; MANGO SEASON JEWELRY DESIGN, INC., MARSH INVESTMENTS CORP.; MICHAEL MARSH; RICHARD SCOTT MCADAMS, SR.; MCGILL ESCROW & TITLE, LLC; GUY E. MCQUILLEN; MEDIA DESIGN GROUP, INC.; MARY MERRITT; MICHELLE METCALFE; MIDTOWN INVESTMENTS, LLC; ROBERT ANDREW MILLER; MIRACLE STRIP MOVING & STORAGE, INC.; ALON MOR; JANINE MORTIMER; JUSTIN MOSS; M.O.T. DEAD SEA, INC.; APRIL MURRAY; SCOTT NELSON; SUSAN NELSON; NEW SHAN KISHI, INC.; MARSHALL NEWLAND; NORTH BAY TIMBER, LLC; NORTHWEST FLORIDA SURGERY CENTER, INC.; OLD HARBOR HOUSE, INC.; ONCE UPON A DREAM VACATIONS; ON-POINTE ENTERTAINMENT GROUP LLC d/b/a IRISH KEVINS; ON-POINTE RESTAURANT GROUP LLC d/b/a LA TRATTORIA VIRGILIOS; ORGANIZED DESIGN OF NW FLORIDA, INC.; RYAN TODD PAINTER; PALETTE COASTAL DESIGN, INC.; PANAMA PAWN, INC.; PANHANDLE PAWN & GUN, LLC; PARADISE II, LLC d/b/a PARADISE USA; BILLIE JO PARKER; JOHN PASCUAL; PATRICK M. KELLEY, M.D. PLASTIC SURGERY CENTER, P.A.; LISA PATY; GARY PEARCE; PEN BAY LIMITED PARTNERSHIP SOUTHWIND APARTMENTS; PERDIDO HOUSING CORPORATION; PERFUME COLLECTION NO. 3, INC.; DAVID PERRY; IRENE PHILLIPS; JOYCE MIRANDA

PIERCE; PISH POSH PATCHOULI'S, LLC;
PLASTER WORX, LLC; POPCORN KINGDOM,
LLC; PRECISION AUTO GLASS, LLC;
PREFCO DISTRIBUTION, LLC; PRINTNOW,
INC.; ERICH PUPALA; CHRISTOPHER JACOB
RANKINS; RENAISSANCE CHIROPRACTIC
HEALTH CENTER, INC.;    RENEE LYNN
RICHARDSON; RL&A INVESTMENTS, LLC
d/b/a WIPE OUT; JIM HAROLD ROBERSON;
ROBERT E. MCGILL, III, P.A.; ROBERT L.
CHARLES LLC d/b/a LOW KEY TYE DYE;
ROCKIN FOOTWEAR, LLC; BRENDA K.
ROGERS d/b/a RACING RAZORS; PATRICK
ROONEY;        ROONEY'S        CARPET
INSTALLATION, INC.; CHYSPA ADAMS
ROSS;   TODD RUDHALL d/b/a PRO LINE
CLEANING; RUSS LAKE APARTMENTS
LIMITED PARTNERSHIP; MICHAEL ALLEN
RUSSELL;    RWL    INVESTMENTS    &
ADMINISTRATIVE SERVICES, LLC; SAF-T-
CART, INC.; MICHELLE LEIGH SAMETZ;
STEVEN   C. SANCHEZ;   MICHAEL   A.
SASSANO, III, TRUST; MARIA SASSANO;
ROBERT SCHMIDT; SCOTSDALE VILLA
CONDOMINIUM II ASSOCIATION, INC.;
SEGER COMMERCIAL PROPERTIES, LLC;
SEXTON'S SEAFOOD, INC.; CONNIE MARIA
SHADRICK    d/b/a    CONNIE    SHADRICK
INSURANCE   SERVICES;   LISA   SHOCK;
SHORELINE     INSTALLATIONS,     INC.;
CRISTINA SINCU; SKALA RESTAURANT
MANAGEMENT, LLC d/b/a SMOKE HOUSE
BBQ; MELVIN A. SLAWIK; FRANK SLUSSER;
SMOK'N BUTTS, LLC; SONSHINE MOTORS,
LLC;   SPANISH   BLUFFS   APARTMENT
LIMITED PARTNERSHIP; PAUL SPAVEN;
ANGELA SPIVEY;  ERICA SPIVEY; SPLIT,

INC. d/b/a BANANA SPLIT USA; HARRY
STANLEY; STARFISH SWIM AND SNORKEL,
INC.; ELIZABETH A. STEINNECKER; KERRY
STICHWEH; PETER ROBERT STORMER;
STRAND IMPORT & DISTRIBUTORS, INC.;
RANDALL STRICKER; LOIS STRICKER; SUN-
ART DESIGN, INC.; SUNSETTERS
ENTERPRISES LLC d/b/a THE SINKING
WEENIE & POWER BLEND CAFÉ; JOHN
TAYLOR; FRANK W. THORNTON; WILLIAM
TIBBITS; LINDA TIBBITS; FRANK N.
TICHENOR; MARLENE TILLERY; TOP
IMAGE USA, INC.; IDALISSE TORRES;
TOWELS & TEES LLC d/b/a TNT
EMBROIDERY; TRIFECTA CONSULTING
LLC d/b/a CLUB AQUA; TRUCKS &
ASSOCIATES, PLLC; BRENDA TUNCER;
TURTLE KRAALS, LLC; NIR TZANANI;
UNDERWATER SPECIALTIES, INC.; UPPER
KEYS ARTIFICIAL REEF FOUNDATION,
INC.; MARK VAUGHAN; CANDACE
VAUGHAN; VON PHISTER, LLC; SUITE
DREAMS INN KEY WEST, LLC; RUDOLPH
WAGNER, II; KARL FREDERICK; SAMUEL
WARREN; WELLINGTON ARMS
PROPERTIES, LLC; DOUG WHITE; WHY
KNOT SANIBEL, INC.; CONNIE WILBUR;
KERRY WILLIAMS; WOODLAND OF BILOXI
LIMITED PARTNERSHIP; HAROLD WRITHE;
YBOR FASHIONS, INC.; YBOR STYLES, INC.;
YNSAR, LLC d/b/a DOCK HOPPERS
WATERFRONT BAR AND GRILL; XUE PING
YU; RAFFI ZABARI; and ZP AUTOMOTIVE
GROUP, INC.

   Plaintiffs,

vs.

BP EXPLORATION & PRODUCTION, INC.,
a Delaware corporation, BP AMERICA
PRODUCTION COMPANY, a Delaware
corporation, BP, P.L.C., a foreign corporation, and
AIRBORNE SUPPORT INTERNATIONAL,
INC., a Louisiana corporation,

       Defendants.

_____/

## COMPLAINT FOR DAMAGES

       COME NOW the Plaintiffs, by and through undersigned counsel, and sue the Defendants, **BP EXPLORATION & PRODUCTION, INC., a Delaware corporation, BP AMERICA PRODUCTION COMPANY, a Delaware corporation, BP, P.L.C., a foreign corporation, and AIRBORNE SUPPORT INTERNATIONAL, INC., a Louisiana corporation,** and as grounds would therefore state as follows:

## PARTIES

       1.     Plaintiffs, 121 Duval Company, a corporation with its principal place of citizenship in the State of Florida.

       2.     Plaintiffs, 126 Duval Company d/b/a Duval Group, Inc., a corporation with its principal place of citizenship in the State of Florida.

       3.     Plaintiffs, 135 Duval Company, a corporation with its principal place of citizenship in the State of Florida.

       4.     Plaintiffs, 1704 21st Avenue, Ltd., a corporation with its principal place of citizenship in the State of Texas.

5.     Plaintiffs, 211 Duval Company, a corporation with its principal place of citizenship in the State of Florida.

6.     Plaintiffs, 407 Locksmiths, Inc., a corporation with its principal place of citizenship in the State of, Florida.

7.     Plaintiffs, 4140 Canal Street, LLC, a corporation with its principal place of citizenship in the State of Florida.

8.     Plaintiffs, 420 Front Street, Inc., a corporation with its principal place of citizenship in the State of Florida.

9.     Plaintiffs, 423 Front Street Corporation d/b/a Harbour House Market, a corporation with its principal place of citizenship in the State of Florida.

10.     Plaintiffs, 619 Duval Company, a corporation with its principal place of citizenship in the State of Florida.

11.     Plaintiffs, 621 Key West, Inc., a corporation with its principal place of citizenship in the State of Florida.

12.     Plaintiffs, 654 Limo, Inc., a corporation with its principal place of citizenship in the State of Florida.

13.     Plaintiffs, 777 Lucky Accessories, Inc., a corporation with its principal place of citizenship in the State of Florida.

14.     Plaintiffs, 9029 Jefferson, LLC, a corporation with its principal place of citizenship in the State of Florida.

15.     Plaintiffs,  AA Irie Perfume, Inc., a corporation with its principal place of citizenship in the State of Florida.

16.     Plaintiffs, Action Gutter, Inc., a corporation with its principal place of citizenship in the State of Florida.

17.     Plaintiff, John J. Aherne, an individual whose citizenship is in the State of Florida.

18.     Plaintiffs, AHF Royal Crest, LLC, a corporation with its principal place of citizenship in the State of Florida.

19.     Plaintiff, Korin Alkelai, an individual whose citizenship is in the State of Florida.

20.     Plaintiffs, Alo Jewelers, Inc. a corporation with its principal place of citizenship in the State of Florida.

21.     Plaintiff, Orlando Alo, an individual whose citizenship is in the State of Florida.

22.     Plaintiff, Sophia Alo, an individual whose citizenship is in the State of Florida.

23.     Plaintiffs, American Tax Service, LLC, a corporation with its principal place of citizenship in the State of Florida.

24.     Plaintiff, Dwayne C. Anderson d/b/a Xtreme Kustom Transport, an individual whose citizenship is in the State of Florida.

25.     Plaintiffs, Andrews Concrete & Hauling, LLC, a corporation with its principal place of citizenship in the State of Florida.

26.     Plaintiff, Sheri Andrews d/b/a S.E.A. Chase Watersports and Credit Card Processing, an individual whose citizenship is in the State of Florida.

27.     Plaintiffs, Randall Anthony and Donna Anthony, individuals whose citizenship is in the State of Tennessee.

28.     Plaintiff, James Appleman, an individual whose citizenship is in the State of Florida.

29.     Plaintiff, Rickey Armbruster, an individual whose citizenship is in the State of Florida.

30.     Plaintiffs, Arnold's Auto & Marine Repair, Inc., d/b/a Arnold's Towing, a corporation with its principal place of citizenship in the State of Florida.

31.     Plaintiffs, Aroma Island's Perfume & Cosmetics, Inc., a corporation with its principal place of citizenship in the State of Florida.

32.     Plaintiffs, Aroma Scent of Style, Inc., a corporation with its principal place of citizenship in the State of Florida.

33.     Plaintiffs, Art Vandelay, Inc., a corporation with its principal place of citizenship in the State of Florida.

34.     Plaintiffs, ATG Transportation, LLC, a corporation with its principal place of citizenship in the State of Florida.

35.     Plaintiffs, Autoworks of Destin, LLC, a corporation with its principal place of citizenship in the State of Florida.

36.     Plaintiffs, B & R Towing Service, LLC, a corporation with its principal place of citizenship in the State of Florida.

37.     Plaintiffs, Baccus Holdings, LLC, a corporation with its principal place of citizenship in the State of Florida.

11

38.     Plaintiff, Sigalit Baliveis, an individual whose citizenship is in the State of Florida.

39.     Plaintiff, Kim Ballard, an individual whose citizenship is in the State of Florida.

40.     Plaintiffs, Banner Tire Key West, Inc., a corporation with its principal place of citizenship in the State of Florida.

41.     Plaintiffs, Baran's Beach Holdings, LLC, a corporation with its principal place of citizenship in the State of Florida.

42.     Plaintiff, Stacey Barfield, an individual whose citizenship is in the State of Florida.

43.     Plaintiffs, Bayshore Housing Corporation, a corporation with its principal place of citizenship in the State of Florida.

44.     Plaintiffs, Baytowne Wharf Neighborhood Association, Inc., a corporation with its principal place of citizenship in the State of Florida.

45.     Plaintiffs, Beach Stop, LLC d/b/a Florida Nail Art, a corporation with its principal place of citizenship in the State of Florida.

46.     Plaintiff, Judy Bellenfant, an individual whose citizenship is in the State of Tennessee.

47.     Plaintiff, Russell Bernard, an individual whose citizenship is in the State of Michigan.

48.     Plaintiffs, Beumer Enterprises, Inc., a corporation with its principal place of citizenship in the State of Florida.

49.     Plaintiffs, Big Easy Media, LLC, a corporation with its principal place of citizenship in the State of Florida.

50.     Plaintiff, Mark Blackmer, an individual whose citizenship is in the State of Mississippi.

51.     Plaintiff, Blackmer Equipment, LLC, a corporation with its principal place of citizenship in the State of Mississippi.

52.     Plaintiff, Charles M. Bond, an individual whose citizenship is in the State of Florida.

53.     Plaintiff, Emory Bray, an individual whose citizenship is in the State of Georgia.

54.     Plaintiff, Robert C. Brayman, an individual whose citizenship is in the State of Florida.

55.     Plaintiffs, Charles Breen and Sally Breen, individuals whose citizenship is in the State of Florida.

56.     Plaintiffs, Builders Choice Cabinets, Inc., a corporation with its principal place of citizenship in the State of Florida.

57.     Plaintiffs, C & C Holdings, LLC, a corporation with its principal place of citizenship in the State of Florida.

58.     Plaintiffs, Callaway Manor Apartments, Ltd., a corporation with its principal place of citizenship in Washington, D.C.

59.     Plaintiffs, Canam Associates, LLC, a corporation with its principal place of citizenship in the State of Florida.

60.     Plaintiffs, Carpenter for Life, Inc., a corporation with its principal place of citizenship in the State of Florida.

61.     Plaintiffs, Cartaya Commercial Company, LLC, a corporation with its principal place of citizenship in the State of Florida.

62.     Plaintiff, Rickey Dean Carter, an individual whose citizenship is in the State of Florida.

63.     Plaintiff, Paradise Adventures, LLC, a corporation with its principal place of citizenship in the State of Florida.

64.     Plaintiff, Douglas Cauble, an individual whose citizenship is in the State of  Tennessee.

65.     Plaintiffs, Celebrity of Clearwater, Inc. d/b/a Flippers, a corporation with its principal place of citizenship in the State of Florida.

66.     Plaintiffs, Celebrity of San Marco, Inc., a corporation with its principal place of citizenship in the State of Florida.

67.     Plaintiffs,  Celebrity of Sand Key, Inc., a corporation with its principal place of citizenship in the State of Florida.

68.     Plaintiff, Joseph C. Celico, an individual whose citizenship is in the State of Florida.

69.     Plaintiff, Celico Custom Builders, Inc., a corporation with its principal place of citizenship in the State of Florida.

70.     Plaintiff, Ying Chen, an individual whose citizenship is in the State of Florida.

14

71.    Plaintiffs, Chianyai, LLC d/b/a Thai Life Floating Restaurant, a corporation with its principal place of citizenship in the State of Florida.

72.    Plaintiffs, Christopher Kevin Davis, P.A. d/b/a A Affordable Health & Dental Insurance , a corporation with its principal place of citizenship in the State of Florida.

73.    Plaintiffs, City Seafood & Produce, LLC, a corporation with its principal place of citizenship in the State of Florida.

74.    Plaintiffs, Coastal Printing Services, Inc., a corporation with its principal place of citizenship in the State of Florida.

75.    Plaintiff, Brad Cobble, an individual whose citizenship is in the State of Florida.

76.    Plaintiff, Nissim Cohen, an individual whose citizenship is in the State of Florida.

77.    Plaintiff, Shlomo Cohen, an individual whose citizenship is in the State of Florida.

78.    Plaintiff, Zadok Cohen, an individual whose citizenship is in the State of Florida.

79.    Plaintiff, Cheryl Collier, an individual whose citizenship is in the State of  Georgia.

80.    Plaintiffs, Colorado Boxed Beef Company, a corporation with its principal place of citizenship in the State of Florida.

81.     Plaintiff, Victoria Combs, an individual whose citizenship is in the State of Florida.

82.     Plaintiff, Thomas E. Company, an individual whose citizenship is in the State of Illinois.

83.     Plaintiff, Claude Comtois, an individual whose citizenship is in the State of Florida.

84.     Plaintiff, Sharon Cook, an individual whose citizenship is in the State of Florida.

85.     Plaintiffs, Cordova Community Facilities Corporation, a corporation with its principal place of citizenship in the State of Florida.

86.     Plaintiffs, Correct Custom Drywall, Inc., a corporation with its principal place of citizenship in the State of Florida.

87.     Plaintiffs, Cottages on the Green, LLC, a corporation with its principal place of citizenship in the State of Florida.

88.     Plaintiff, Hugh Cox, an individual whose citizenship is in the State of in the State of Florida.

89.     Plaintiff, Jeff Crawford, an individual whose citizenship is in the State of Florida.

90.     Plaintiffs, Creative Gems, Inc., a corporation with its principal place of citizenship in the State of Florida.

91.     Plaintiff, Dennis Cross, an individual whose citizenship is in the State of Florida.

92.     Plaintiff, Jordan A. Cross, an individual whose citizenship is in the State of Florida.

93.     Plaintiff, Thomas Crowson, an individual whose citizenship is in the State of Mississippi.

94.     Plaintiffs, Crystal Bay Pools, LLC, a corporation with its principal place of citizenship in the State of, Florida.

95.     Plaintiffs, Custom Rod & Reel of Lighthouse Point, Inc., a corporation with its principal place of citizenship in the State of Florida.

96.     Plaintiffs, D&R Drywall, LLC, a corporation with its principal place of citizenship in the State of Florida.

97.     Plaintiffs, D&R Wholesale LLC, a corporation with its principal place of citizenship in the State of Florida.

98.     Plaintiffs, D&M Used Cars, Inc., d/b/a Davis Mobile Homes, a corporation with its principal place of citizenship in the State of Florida.

99.     Plaintiffs, David Lewis Roofing Company, a corporation with its principal place of citizenship in the State of Florida.

100.     Plaintiff, Rob Davidson, an individual whose citizenship is in the State of Georgia.

101.     Plaintiffs, Davis Properties of NW Florida, Inc., a corporation with its principal place of citizenship in the State of Florida.

102.    Plaintiffs, Davis-Nunnery Industries, LLC, a corporation with its principal place of citizenship in the State of Florida.

103.    Plaintiffs, DB of Ocean Drive Enterprises, Inc., a corporation with its principal place of citizenship in the State of Florida.

104.    Plaintiffs, Décor Design Center, Inc., a corporation with its principal place of citizenship in the State of Florida.

105.    Plaintiffs, Deep Splash, Inc., a corporation with its principal place of citizenship in the State of Texas.

106.    Plaintiff, Louis Chris Diehl, an individual whose citizenship is in the State of Florida.

107.    Plaintiffs, Dinkins Properties, LLC, a corporation with its principal place of citizenship in the State of Florida.

108.    Plaintiffs, DK Embroidery, Inc., a corporation with its principal place of citizenship in the State of Florida.

109.    Plaintiff, Wei Tong Dong, an individual whose citizenship is in the State of Florida.

110.    Plaintiff, Randall Drabczuk, an individual whose citizenship is in the State of Florida.

111.    Plaintiffs, Dude-N-Brah, Inc., d/b/a Helen Back Cafe, a corporation with its principal place of citizenship in the State of Florida.

112.    Plaintiffs, Dumala & Son Paving Contractors, Inc., a corporation with its principal place of citizenship in the State of Florida.

18

113.    Plaintiffs, Joseph Dumala and Sandra Dumala, individuals whose citizenship is in the State of Florida.

114.    Plaintiff, Sandra Dumala, an individual whose citizenship is in the State of Florida.

115.    Plaintiff, Christy Eckert, an individual whose citizenship is in the State of Florida.

116.    Plaintiffs, EM Leasing International, LLC, a corporation with its principal place of citizenship in the State of Florida.

117.    Plaintiffs, Emerald Coast Associates, Inc., a corporation with its principal place of citizenship in the State of Florida.

118.    Plaintiffs, Emerald Coast Housing II, Inc., a corporation with its principal place of citizenship in the State of Florida.

119.    Plaintiffs, Emerald Gulf Construction LLC, a corporation with its principal place of citizenship in the State of Florida.

120.    Plaintiffs, Enrichment of Life LLC, a corporation with its principal place of citizenship in the State of Florida.

121.    Plaintiffs, Ensley Square, LLC, a corporation with its principal place of citizenship in Oldsmar, Florida.

122.    Plaintiffs, Entrust New Direction IRA, Inc., a corporation with its principal place of citizenship in the State of Florida.

123.    Plaintiffs, Esus, Inc., a corporation with its principal place of citizenship in the State of Florida.

124.    Plaintiffs, Exist, Inc., a corporation with its principal place of citizenship in the State of Florida.

125.    Plaintiff, Arlene Felisimino, an individual whose citizenship is in the State of Georgia.

126.    Plaintiff, Joseph Feltner, an individual whose citizenship is in the State of Florida.

127.    Plaintiff, Joan Fitzsimmons, an individual whose citizenship is in the State of Florida.

128.    Plaintiff, Paul Fitzsimmons, an individual whose citizenship is in the State of New Zealand.

129.    Plaintiffs, Florida Floors, Inc., a corporation with its principal place of citizenship in the State of Florida.

130.    Plaintiff, Sidney Rafael Floyd, Jr., an individual whose citizenship is in the State of Florida.

131.    Plaintiff, Allison Forbes, an individual whose citizenship is in the State of Florida.

132.    Plaintiffs, Foundational Financial Services, Inc., a corporation with its principal place of citizenship in the State of Florida.

133.    Plaintiffs, Fox Garden Apartments, Inc., a corporation with its principal place of citizenship in Washington, D.C..

134.    Plaintiffs, Fox Manor Apartments, Ltd., a corporation with its principal place of citizenship in Washington, D.C.

135.    Plaintiffs, Freschink, LLC, a corporation with its principal place of citizenship in the State of Florida.

136.    Plaintiffs, Frisky-Nineteen, LLC, a corporation with its principal place of citizenship in the State of Florida.

137.    Plaintiffs, Gaddie Marine, Inc., a corporation with its principal place of citizenship in the State of Florida.

138.    Plaintiffs, Game Palace, Inc., a corporation with its principal place of citizenship in the State of Tennessee.

139.    Plaintiffs, Glib Enterprises, LLC d/b/a Gulf Beach Auto Sales, a corporation with its principal place of citizenship in the State of Florida.

140.    Plaintiffs, Global Southern, LLC, a corporation with its principal place of citizenship in the State of Florida.

141.    Plaintiff, John Gollinger, an individual whose citizenship is in the State of Michigan.

142.    Plaintiff, Patti Gonzo, an individual whose citizenship is in the State of Florida.

143.    Plaintiff, Willie Graham, an individual whose citizenship is in the State of Florida.

144.    Plaintiff, Cody C. Gray, an individual whose citizenship is in the State of Florida.

145.    Plaintiffs, Great Fish Company, a corporation with its principal place of citizenship in the State of Florida.

146.     Plaintiffs, Greater Key West Chamber of Commerce, Inc., a corporation with its principal place of citizenship in the State of Florida.

147.     Plaintiffs, Green Acres Development, LLC, a corporation with its principal place of citizenship in the State of Texas.

148.     Plaintiff, Carline Green, an individual whose citizenship is in the State of Alabama.

149.     Plaintiffs, Groovy Dancing, Inc., a corporation with its principal place of citizenship in the State of Florida.

150.     Plaintiff, Adrian Gurganious, an individual whose citizenship is in the State of Florida.

151.     Plaintiffs, Happily Ever After in Key West, LLC, a corporation with its principal place of citizenship in the State of Florida.

152.     Plaintiffs, Happy Kids for Kids, Inc., a corporation with its principal place of citizenship in the State of Florida.

153.     Plaintiff, Kevin D. Harper, an individual whose citizenship is in the State of Florida.

154.     Plaintiff, Sandra Hasek, an individual whose citizenship is in the State of Florida.

155.     Plaintiffs, Health Care Exchange of NW Florida, Inc., a corporation with its principal place of citizenship in the State of Florida.

156.     Plaintiffs, Helen Back Express LLC, a corporation with its principal place of citizenship in the State of Florida.

157.    Plaintiffs, Helios Asset Investment, LLC, a corporation with its principal place of citizenship in the State of New York.

158.    Plaintiff, Charm Hess, an individual whose citizenship is in the State of Florida.

159.    Plaintiff, Jimmy Hewitt d/b/a Hewitt's Paint & Body, an individual whose citizenship is in the State of Florida.

160.    Plaintiffs, Hiatus Properties, Inc., a corporation with its principal place of citizenship in the State of Florida.

161.    Plaintiffs, High Tide Development, LLC, a corporation with its principal place of citizenship in the State of Florida.

162.    Plaintiff, Holland K. Hight d/b/a Island Equity Real Estate, an individual whose citizenship is in the State of Florida.

163.    Plaintiff, Mary Leigh Hills, an individual whose citizenship is in the State of Florida.

164.    Plaintiff, Anthony Hills, Sr., an individual whose citizenship is in the State of Florida.

165.    Plaintiffs, Honaker Automotive, LLC, a corporation with its principal place of citizenship in the State of Florida.

166.    Plaintiff, Leroy Robert Hopkins, III, an individual whose citizenship is in the State of Florida.

167.    Plaintiff, Roy Howard, an individual whose citizenship is in the State of Kentucky.

168.     Plaintiffs, Institute of Diving, Inc., a corporation with its principal place of citizenship in the State of Florida.

169.     Plaintiffs, IPRP, LLC, a corporation with its principal place of citizenship in the State of Florida.

170.     Plaintiffs, Island Gear LLC d/b/a Towel World, a corporation with its principal place of citizenship in the State of Florida.

171.     Plaintiffs, Island Ink Tattoo, Inc., a corporation with its principal place of citizenship in the State of Florida.

172.     Plaintiff, Ricky James d/b/a Beach Hawg, an individual whose citizenship is in the State of Florida.

173.     Plaintiff, Ricky James d/b/a R&T Investments, an individual whose citizenship is in the State of Florida.

174.     Plaintiff, Elizabeth Janke, an individual whose citizenship is in the State of Illinois.

175.     Plaintiff, Donald Johnson d/b/a A&A Concrete, an individual whose citizenship is in the State of Florida.

176.     Plaintiff, Kelly Jones, an individual whose citizenship is in the State of Tennessee.

177.     Plaintiff, Perry B. Jones, an individual whose citizenship is in the State of Florida.

178.     Plaintiffs, JRA Architects, Inc., a corporation with its principal place of citizenship in the State of Florida.

179.     Plaintiffs, JRS Management, Inc., a corporation with its principal place of citizenship in Washington, DC.

180.     Plaintiffs, Juliard's Properties, Inc., a corporation with its principal place of citizenship in the State of Georgia.

181.     Plaintiff, Daniel Kester, an individual whose citizenship is in the State of Florida.

182.     Plaintiff, Randell Kester, an individual whose citizenship is in the State of Florida.

183.     Plaintiffs, Key West Extreme Adventures, Inc., a corporation with its principal place of citizenship in the State of Florida.

184.     Plaintiff, Thomas L. Klosterman, Jr., an individual whose citizenship is in the State of Florida.

185.     Plaintiff, Richard Knight, an individual whose citizenship is in the State of Hawaii.

186.     Plaintiff, Kevin Kraus, an individual whose citizenship is in the State of Florida.

187.     Plaintiff, Patrick Taylor Kreis d/b/a Alphaco Marine Construction, an individual whose citizenship is in the State of Florida.

188.     Plaintiffs, Lake Garden Apartments, Ltd, a corporation with its principal place of citizenship in Washington, DC.

189.     Plaintiff, Michael A. Lancaster, an individual whose citizenship is in the State of Florida.

190.     Plaintiff, Gregory LaPlante, an individual whose citizenship is in the State of Florida.

191.     Plaintiff, Thomas LaPlante, an individual whose citizenship is in the State of Florida.

192.     Plaintiffs, Le Tre Sorelle, Inc., a corporation with its principal place of citizenship in the State of Florida.

193.     Plaintiffs, Lenderman Drywall, Inc., a corporation with its principal place of citizenship in the State of Florida.

194.     Plaintiff, Morris Loveland d/b/a Chick-Fil-A, an individual whose citizenship is in the State of Florida.

195.     Plaintiffs, Luther's Pontoon & Jet Ski Rentals, Inc., a corporation with its principal place of citizenship in the State of Florida.

196.     Plaintiffs, M&D of Destin LLC, a corporation with its principal place of citizenship in the State of Florida.

197.     Plaintiffs, Majestic Roofing & Restoration Company, Inc., a corporation with its principal place of citizenship in the State of Florida.

198.     Plaintiffs, Mango Season Jewelry Design, Inc., a corporation with its principal place of citizenship in the State of Florida.

199.     Plaintiffs, Marsh Investments Corp., a corporation with its principal place of citizenship in the State of Louisiana.

200.     Plaintiff, Michael Marsh, an individual whose citizenship is in the State of Florida.

26

201.    Plaintiff, Richard Scott McAdams, Sr., an individual whose citizenship is in the State of Florida.

202.    Plaintiffs, McGill Escrow & Title LLC, a corporation with its principal place of citizenship in the State of Florida.

203.    Plaintiff, Guy E. McQuillen, an individual whose citizenship is in the State of Florida.

204.    Plaintiffs, Media Design Group, Inc., a corporation with its principal place of citizenship in the State of Florida.

205.    Plaintiff, Mary Merritt, an individual whose citizenship is in the State of Alabama.

206.    Plaintiff, Michelle Metcalfe, an individual whose citizenship is in the State of Florida.

207.    Plaintiffs, Midtown Investments, LLC, a corporation with its principal place of citizenship in the State of Florida.

208.    Plaintiff, Robert Andrew Miller, an individual whose citizenship is in the State of Florida.

209.    Plaintiffs, Miracle Strip Moving & Storage, Inc., a corporation with its principal place of citizenship in the State of Florida.

210.    Plaintiff, Alon Mor, an individual whose citizenship is in the State of Florida.

211.    Plaintiff, Janine Mortimer, an individual whose citizenship is in the Virgin Islands.

212. Plaintiff, Justin Moss, an individual whose citizenship is in the State of Florida.

213. Plaintiffs, M.O.T. Dead Sea, Inc., a corporation with its principal place of citizenship in the State of Florida.

214. Plaintiff, April Murray, an individual whose citizenship is in the State of Florida.

215. Plaintiff, Scott Nelson, an individual whose citizenship is in the State of Florida.

216. Plaintiff, Susan Nelson, an individual whose citizenship is in the State of Florida.

217. Plaintiffs, New Shan Kishi, Inc., a corporation with its principal place of citizenship in the State of Florida.

218. Plaintiff, Marshall Newland, an individual whose citizenship is in the State of Minnesota.

219. Plaintiffs, North Bay Timber, LLC, a corporation with its principal place of citizenship in the State of Florida.

220. Plaintiffs, Northwest Florida Surgery Center, Inc., a corporation with its principal place of citizenship in the State of Florida.

221. Plaintiffs, Old Harbor House, Inc., a corporation with its principal place of citizenship in the State of Florida.

222. Plaintiffs, Once Upon a Dream Vacations, a partnership with its principal place of citizenship in the State of Florida.

223.    Plaintiffs, On-Pointe Entertainment Group LLC d/b/a Irish Kevins, a corporation with its principal place of citizenship in the State of Florida.

224.    Plaintiffs, On-Pointe Restaurant Group LLC d/b/a La Trattoria Virgilios, a corporation with its principal place of citizenship in the State of Florida.

225.    Plaintiffs, Organized Design of NW Florida, Inc., a corporation with its principal place of citizenship in the State of Florida.

226.    Plaintiff, Ryan Todd Painter, an individual whose citizenship is in the State of Florida.

227.    Plaintiffs, Palette Coastal Design, Inc., a corporation with its principal place of citizenship in the State of Florida.

228.    Plaintiffs, Panama Pawn, Inc., a corporation with its principal place of citizenship in the State of Florida.

229.    Plaintiffs, Panhandle Pawn & Gun LLC, a corporation with its principal place of citizenship in the State of Florida.

230.    Plaintiffs, Paradise II, LLC d/b/a Paradise USA, a corporation with its principal place of citizenship in the State of Florida.

231.    Plaintiff, Billie Jo Parker, an individual whose citizenship is in the State of Florida.

232.    Plaintiff, John Pascual, an individual whose citizenship is in the State of Florida.

233.    Plaintiffs, Patrick M. Kelley, MD Plastic Surgery Center PA, a corporation with its principal place of citizenship in the State of Florida.

234.     Plaintiff, Lisa Paty, an individual whose citizenship is in the State of Tennessee.

235.     Plaintiff, Gary Pearce, an individual whose citizenship is in Canada.

236.     Plaintiffs, Pen Bay Limited Partnership Southwind Apartments, a limited partnership with its principal place of citizenship in Washington DC.

237.     Plaintiffs, Perdido Housing Corporation, a corporation with its principal place of citizenship in the State of Florida.

238.     Plaintiffs, Perfume Collection No. 3, Inc., a corporation with its principal place of citizenship in the State of Florida.

239.     Plaintiff, David Perry, an individual whose citizenship is in the State of Florida.

240.     Plaintiff, Irene Phillilps, an individual whose citizenship is in the State of Florida.

241.     Plaintiff, Joyce Miranda Pierce, an individual whose citizenship is in the State of Florida.

242.     Plaintiffs, Pish Posh Patchouli's, LLC, a corporation with its principal place of citizenship in the State of Florida.

243.     Plaintiffs, Plaster Worx LLC, a corporation with its principal place of citizenship in the State of Florida.

244.     Plaintiffs, Popcorn Kingdom, LLC, a corporation with its principal place of citizenship in the State of Florida.

245.     Plaintiffs, Precision Auto Glass LLC, a corporation with its principal place of citizenship in the State of Florida.

246.     Plaintiffs, Prefco Distribution LLC, a corporation with its principal place of citizenship in the State of Florida.

247.     Plaintiffs, Printnow, Inc., a corporation with its principal place of citizenship in the State of Florida.

248.     Plaintiff, Erich Pupala, an individual whose citizenship is in the State of Florida.

249.     Plaintiff, Christopher Jacob Rankins, an individual whose citizenship is in the State of Florida.

250.     Plaintiffs, Renaissance Chiropractic Health Center, Inc., a corporation with its principal place of citizenship in the State of Georgia.

251.     Plaintiff, Renee Lynn Richardson, an individual whose citizenship is in the State of Florida.

252.     Plaintiffs, RL&A Investments LLC d/b/a Wipe Out, a corporation with its principal place of citizenship in the State of Florida.

253.     Plaintiff, Jim Harold Roberson, an individual whose citizenship is in the State of Florida.

254.     Plaintiffs, Robert E. McGill, III, PA, a corporation with its principal place of citizenship in the State of Florida.

255.     Plaintiffs, Robert L. Charles LLC d/b/a Low Key Tye Dye, a corporation with its principal place of citizenship in the State of Florida.

256.     Plaintiffs, Rockin Footwear, LLC, a corporation with its principal place of citizenship in the State of Florida.

257.     Plaintiff, Brenda K. Rogers d/b/a Racing Razors, an individual whose citizenship is in the State of Florida.

258.     Plaintiff, Patrick Rooney, an individual whose citizenship is in the State of Florida.

259.     Plaintiffs, Rooney's Carpet Installation, Inc., a corporation with its principal place of citizenship in the State of Florida.

260.     Plaintiff, Chyspa Adams Ross, an individual whose citizenship is in the State of Florida.

261.     Plaintiff, Todd Rudhall d/b/a Pro Line Cleaning, an individual whose citizenship is in the State of Florida.

262.     Plaintiffs, Russ Lake Apartments Limited Partnership, a limited partnership with its principal place of citizenship in Washington, DC.

263.     Plaintiff, Michael Allen Russell, an individual whose citizenship is in the State of Florida.

264.     Plaintiffs, RWL Investments & Administrative Services LLC, a corporation with its principal place of citizenship in the State of Florida.

265.     Plaintiffs, Saf-T-Cart, Inc., a corporation with its principal place of citizenship in the State of Mississippi.

266.     Plaintiff, Michelle Leigh Sametz, an individual whose citizenship is in the State of Florida.

267.    Plaintiff, Steven C. Sanchez, an individual whose citizenship is in the State of Florida.

268.    Plaintiffs, Michael A. Sassano, III, Trust, a corporation with its principal place of citizenship in the State of Florida.

269.    Plaintiff, Maria Sassano, an individual whose citizenship is in the State of Florida.

270.    Plaintiff, Robert Schmidt, an individual whose citizenship is in the State of Illinois.

271.    Plaintiffs, Scotsdale Villa Condominium II Association Inc, a corporation with its principal place of citizenship in the State of Florida.

272.    Plaintiffs, Seger Commercial Properties LLC, a corporation with its principal place of citizenship in the State of Florida.

273.    Plaintiffs, Sexton's Seafood, Inc., a corporation with its principal place of citizenship in the State of Florida.

274.    Plaintiff, Connie Maria Shadrick d/b/a Connie Shadrick Insurance Services, an individual whose citizenship is in the State of Florida.

275.    Plaintiff, Lisa Shock, an individual whose citizenship is in the State of Florida.

276.    Plaintiffs, Shoreline Installations, Inc., a corporation with its principal place of citizenship in the State of Florida.

277.    Plaintiff, Cristina Sincu, an individual whose citizenship is in the State of Florida.

33

278.   Plaintiffs, Skala Restaurant Management LLC d/b/a Smoke House BBQ, a corporation with its principal place of citizenship in Canada.

279.   Plaintiff, Melvin A. Slawik, an individual whose citizenship is in the State of Florida.

280.   Plaintiff, Frank Slusser, an individual whose citizenship is in the State of Florida.

281.   Plaintiffs, Smok'n Butts, LLC, a corporation with its principal place of citizenship in the State of Florida.

282.   Plaintiffs, Sonshine Motors, LLC, a corporation with its principal place of citizenship in the State of Florida.

283.   Plaintiffs, Spanish Bluffs Apartment Limited Partnership, a limited partnership with its principal place of citizenship in Washington, DC.

284.   Plaintiff, Paul Spaven, an individual whose citizenship is in the State of Arizona.

285.   Plaintiffs, Angela Spivey and Erica Spivey, individuals whose citizenship is in the State of Georgia.

286.   Plaintiffs, Split, Inc. d/b/a Banana Split USA, a corporation with its principal place of citizenship in the State of Florida.

287.   Plaintiff, Harry Stanley, an individual whose citizenship is in England.

288.   Plaintiffs, Starfish Swim and Snorkel, Inc., a corporation with its principal place of citizenship in the State of Florida.

289.     Plaintiff, Elizabeth A. Steinnecker, an individual whose citizenship is in the State of Florida.

290.     Plaintiff, Kerry Stichweh, an individual whose citizenship is in the State of New York.

291.     Plaintiff, Peter Robert Stormer, an individual whose citizenship is in the State of Florida.

292.     Plaintiffs, Strand Import & Distributors, Inc., a corporation with its principal place of citizenship in the State of Florida.

293.     Plaintiffs, Randall Stricker and Lois Stricker, individuals whose citizenship is in the State of Florida.

294.     Plaintiffs, Sun-Art Design, Inc., a corporation with its principal place of citizenship in the State of Florida.

295.     Plaintiffs, Sunsetters Enterprises LLC d/b/a The Sinking Weenie & Power Blend Cafe, a corporation with its principal place of citizenship in the State of Florida.

296.     Plaintiff, John Taylor, an individual whose citizenship is in the State of Florida.

297.     Plaintiff, Frank W. Thornton, an individual whose citizenship is in the State of Florida.

298.     Plaintiffs, William Tibbits and Linda Tibbits, individuals whose citizenship is in the State of Florida.

299.     Plaintiff, Frank N. Tichenor, an individual whose citizenship is in the State of Florida.

300.     Plaintiff, Marlene Tillery, an individual whose citizenship is in the State of Vermont.

301.     Plaintiffs, Top Image USA, Inc., a corporation with its principal place of citizenship in the State of Florida.

302.     Plaintiff, Idalisse Torres, an individual whose citizenship is in the State of Florida.

303.     Plaintiffs, Towels & Tees LLC d/b/a TNT Embroidery, a corporation with its principal place of citizenship in the State of Florida.

304.     Plaintiffs, Trifecta Consulting LLC d/b/a Club Aqua, a corporation with its principal place of citizenship in the State of Florida.

305.     Plaintiffs, Trucks & Associates, PLLC, a corporation with its principal place of citizenship in the State of Florida.

306.     Plaintiff, Brenda Tuncer, an individual whose citizenship is in the State of Florida.

307.     Plaintiffs, Turtle Kraals LLC, a corporation with its principal place of citizenship in the State of Florida.

308.     Plaintiff, Nir Tzanani, an individual whose citizenship is in the State of Florida.

309.     Plaintiffs, Underwater Specialties, Inc., a corporation with its principal place of citizenship in the State of Florida.

310.    Plaintiffs, Upper Keys Artificial Reef Foundation, Inc., a corporation with its principal place of citizenship in the State of Florida.

311.    Plaintiffs, Mark Vaughan and Candace Vaughan, individuals whose citizenship is in the State of Alabama.

312.    Plaintiffs, Von Phister LLC, a corporation with its principal place of citizenship in the State of Florida.

313.    Plaintiffs, Suite Dreams Inn  Key West LLC, a corporation with its principal place of citizenship in the State of Florida.

314.    Plaintiff, Rudolph Wagner, II and Karl Frederick, individuals whose citizenship is in the State of Georgia.

315.    Plaintiff, Samuel Warren, an individual whose citizenship is in the State of Florida.

316.    Plaintiffs, Wellington Arms Properties LLC, a corporation with its principal place of citizenship in the State of Florida.

317.    Plaintiff, Doug White, an individual whose citizenship is in the State of Tennessee.

318.    Plaintiffs, Why Knot Sanibel, Inc., a corporation with its principal place of citizenship in the State of Florida.

319.    Plaintiff, Connie Wilbur, an individual whose citizenship is in the State of Florida.

320.    Plaintiff, Kerry Williams, an individual whose citizenship is in the State of Florida.

321.    Plaintiffs, Woodland of Biloxi Limited Partnership, a limited partnership with its principal place of citizenship in Washington, DC.

322.    Plaintiff, Harold "Bud" Writhe, an individual whose citizenship is in the State of Florida.

323.    Plaintiffs, Ybor Fashions, Inc., a corporation with its principal place of citizenship in the State of, Florida.

324.    Plaintiffs, Ybor Styles, Inc., a corporation with its principal place of citizenship in the State of Florida.

325.    Plaintiffs, Ynsar LLC d/b/a Dock Hoppers Waterfront Bar and Grill, a corporation with its principal place of citizenship in the State of Florida.

326.    Plaintiff, Xue Ping Yu, an individual whose citizenship is in the State of Florida.

327.    Plaintiff, Raffi Zabari, an individual whose citizenship is in the State of Florida.

328.    Plaintiffs, ZP Automotive Group, Inc., a corporation with its principal place of citizenship in the State of, Florida.

329.    All parties in this complaint share common issues of law and fact. At material times, each resided in Florida.  Each was damaged and injured by exposure to and from the subject oil spill and chemical remediation negligence of Defendants.

330.    None of these joined Plaintiffs bring a Federal Maritime Claim as neither their real or personal property was directly contacted and damaged by the subject

polluting chemicals, and/or none are fisherman/fishing vessel owners who earned their livelihoods from commercial fishing activities.

331. Defendant, BP EXPLORATION & PRODUCTION INC., is a Delaware corporation, at all pertinent times registered to do and doing business in the State of Florida, and/or its territorial waters, whose principal business establishment and registered business office is in Houston, Texas is 501 Westlake Park Blvd., Houston, Texas 77079 and whose agent for service of process is C.T. Corporation, 1200 South Pine Island Road, Plantation, Florida 33324. BP EXPLORATION & PRODUCTION INC. was a leaseholder and designated operator of the Macondo well from which the oil spill originated upon which this complaint is based and was designated as a responsible party by the U.S. Coast Guard under the Oil Pollution Act of 1990, 33 U.S.C. § 2714.

332. Defendant, BP AMERICA PRODUCTION COMPANY, is a Delaware corporation, at all pertinent times registered to do and doing business in the State of Florida, and/or its territorial waters, whose principal business establishment and registered business office in Houston, Texas is 501 Westlake Park Blvd., Houston, Texas 77079 and whose agent for service of process is C.T. Corporation, 1200 South Pine Island Road, Plantation, Florida. BP AMERICA PRODUCTION COMPANY was party to the contract for the drilling of the Macondo well by the Deepwater Horizon vessel.

333. Defendant, BP, P.L.C., is a foreign corporation, at all pertinent times doing business in the State of Florida through control of its wholly-owned subsidiaries BP Exploration & Production, Inc. and BP America Production Company (collectively "BP").

334.     Defendant, AIRBORNE SUPPORT INTERNATIONAL, INC., is a Louisiana corporation, whose domicile address in Louisiana is 3626 Thunderbird Rd., Houma, LA 70363 and whose registered agent is Howard Barker, 3626 Thunderbird Rd., Houma, LA 70363 (hereinafter "ASI International"). ASI International participated in the post-explosion Oil Spill remediation and response efforts including involvement in the spraying or release of chemicals in Florida's Territorial Waters.

## JURISDICTION AND VENUE

335.     Plaintiffs incorporate by reference, *verbatim*, the allegations in Paragraphs 1 through 9, above.

336.     This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1332(a)(4), because this matter in controversy exceeds the minimum jurisdictional amount of $75,000.00, exclusive of interest and costs, and this case is between Plaintiffs and citizens of a State or of different States.

337.     Jurisdiction is also proper under 28 U.S.C. Section 1331, because the claims asserted by Plaintiffs arise under the laws of the United States of America, including the laws of various states which have been declared, pursuant to 43 U.S.C., Section 1331(f)(1) and 1333(a)(2), to be the law of the United States for that portion of the outer continental shelf from which the oil spill originated.  Federal question jurisdiction under 28 U.S.C. §1331 also exists by virtue of Plaintiffs' claims brought herein which arise under the Oil Pollution Act of 1990.

338.     In addition, this Court has jurisdiction over this action pursuant to the Oil Pollution Act, 33 U.S.C. §2717(b) (the "OPA").

339.     Pleading in the alternative, jurisdiction also exists over this action pursuant to The Admiralty Extension Act, 46 U.S.C., §30101, which extends the admiralty and maritime jurisdiction of the United States to cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land.

## FACTUAL ALLEGATIONS

340.     These cases arise from the April 20, 2010, loss of control of the Macondo well that was being drilled by the Deepwater Horizon drilling vessel and the related explosions on that vessel which caused it to sink and resulted in the discharge of significant amounts of oil that spread throughout the Gulf of Mexico over a period of more than three months.  They also arise due to subsequent additional negligent acts and failure of reasonable care which occurred in Florida territorial waters.

341.     At all times relevant to this action, the Deepwater Horizon, an ultra-deep water semi-submersible drilling rig, was leased to BP.  At the time of its explosion on April 20, 2010, the Deepwater Horizon was being operated by BP for the purposes of drilling an exploratory well at the Macondo prospect on Mississippi Canyon Block 252 on the Outer Continental Shelf, south, west and north of Florida shores and waters.

342.     The Macondo prospect was being explored pursuant to a ten-year lease, OCS-G32306, granted by the Minerals Management Services on June 1, 2008, and

41

owned at the time of the explosion by BP. The lease allowed BP to drill for hydrocarbons and perform oil production-related operations in the Mississippi Canyon Block 252 area which includes the Macondo prospect. BP was designated the lease operator.

### The Blowout

343. At approximately 10 p.m. on April 20, 2010, following cementing operations aboard the vessel Deepwater Horizon, workers were finishing drilling operations for the Macondo well and displacing the drilling mud in the marine riser at the direction of BP in preparation for completion pursuant to BP's design, when they encountered an uncontrolled influx of highly pressurized hydrocarbons into the wellbore leading to a "blowout" or loss of control of the well.

344. The combustible gas flowing uncontrolled into the wellbore traveled quickly up to the rig floor where it was ignited leading to a fiery explosion on the Deepwater Horizon.

345. Defendant, BP was unable to regain control of the well and the fiery explosions onboard the Deepwater Horizon caused the vessel to be destroyed and sink to the bottom of the Gulf of Mexico.

346. BP did not follow safe procedures, in order to save money, by electing to utilize a risky well design that provided for fewer barriers against hydrocarbon influx into the wellbore relative to well designs typically used in an unknown and troublesome formation like the Macondo prospect.

347.    Due to the depth of the Macondo well, BP was also negligent in the selection of a casing material that was vulnerable to collapse under high pressure. BP's negligence in well design and casing selection allowed for an increase risk of a blowout. BP knew or should have known of those risks but chose risk over increased costs.

348.    In addition to the casing-related problems, the float collar installed on the final section of casing likely failed to seal properly, which may have allowed hydrocarbons to leak into the casing, contributing to the April 20, 2010 blowout.

349.    A float collar is a component installed near the bottom of the casing string on which cement plugs land during the cementing job.

350.    Upon information and belief BP was negligent in operations to install the float collar and/or in neglecting warning signs of a potentially improper installation of the float collar.

351.    BP was negligent in preparing the wellbore for cementing operations which led to an increased likelihood that the cement job would fail and a blowout would occur.

352.    BP was negligent in electing to utilize an unsafe cement job design that was unlikely to create a secure barrier against hydrocarbon influxes into the Macondo wellbore.

353.    BP was negligent in the selection of an improper cement mixture that was susceptible to failure under the high pressures and temperatures typical in the Macondo well.

354. Negligent cementing operations failed to isolate the well bore from hydrocarbon zones and seal the bottom of the well against an influx of gas. BP was negligent in failing to identify this bad cement job ignoring numerous warning signs in the process.

355. Upon information and belief, the defective cement job allowed a pathway for highly pressured gas to enter the Macondo wellbore and travel rapidly from there to the rig floor.

356. BP was negligent in the monitoring and design of the drilling mud program which failed to prevent hydrocarbons from flowing into the wellbore and up to the Deepwater Horizon.

357. BP was negligent in the decision and design to displace the drilling mud from the marine riser before allowing time for the cement to fully set.

358. BP was also negligent in conducting and monitoring the displacement operations, failing to recognize the many signs of trouble.

359. BP was negligent in failing to utilize a casing hanger lockdown sleeve that would have stopped the hydrocarbons from escaping past the wellhead and reaching the rig floor.

360. BP was negligent in failing to timely identify that hydrocarbons were entering the wellbore during displacement operations and in failing to initiate well control measures.

361.    After hydrocarbons reached the rig floor, the Blowout Preventers (BOP's) for the Deepwater Horizon, failed to activate as designed to prevent the continued uncontrolled flow of gas from the formation.

362.    The BOP utilized by BP was defective and unreasonably dangerous in their manufacture, design, and/or composition, and/or failed to contain adequate warnings and instructions.

363.    BP failed to ensure that the BOP design used on Deepwater Horizon was sufficient for the drilling conditions and program expected at the Macondo site.

364.    BP was negligent in failing to properly maintain the BOP's for the Deepwater Horizon in accordance with safe practices and federal regulations.

365.    BP failed to ensure that the BOP's possessed the necessary technology to properly function including adequate safeguards and redundant systems to prevent blowouts.

366.    BP failed to ensure that the BOP's and all related systems were properly tested to operational conditions and confirmed to be in good working order.

367.    BP was negligent in failing to properly utilize and maintain emergency systems and equipment on board the Deepwater Horizon or to supervise and/or inspect to assure same.

368.    Defendants' negligent actions and/or omissions caused the blowout of the Macondo well leading to the destruction and sinking of the Deepwater Horizon and subsequent uncontrolled discharge of oil into the Gulf of Mexico.

## Uncontrolled Discharge of Oil into the Gulf and Environmental Implications

369. After the sinking of the Deepwater Horizon, the well began to release, leak, and/or discharge oil directly into the Gulf of Mexico due to the failure of the well's cement and/or casing and the concurrent failure of the blow-out preventors.

370. Defendant, BP, recklessly, willfully and/or wantonly failed to ensure that oil would be quickly and fully contained within the immediate vicinity of the Macondo well in the event of a blowout.

371. The well discharged an estimated 50,000 to 100,000 barrels of oil into the Gulf of Mexico on a daily basis for at least 87 days.

372. The United States government has estimated that approximately 5,000,000 barrels (210,000,000 gallons) of oil gushed into the Gulf of Mexico during the months that the well was uncontained with others estimating that the well discharged upwards of 7,000,000 barrels.

373. Defendant, BP, willfully and/or wantonly failed to ensure that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects of an uncontrolled discharge from the Macondo well into the Gulf of Mexico and to prevent injuring Plaintiffs.

374. This massive release of oil contaminated thousands of square miles of waters in the Gulf as the well flowed uncontained for three months resulting in the ban of recreational and commercial fishing by the government in many areas during that time period.

375. The oil discharged into the Gulf of Mexico from the Macondo well contained hydrocarbon molecules, carcinogens and other toxic pollutants including heavy metals which are extremely hazardous to the marine ecosystem in the Gulf of Mexico including that found in the territorial waters and shores of Florida.

376. In addition to the oil that was released by BP's Macondo well, BP directed over two million gallons of chemical dispersants to be sprayed, injected or otherwise released into Gulf waters including Florida territorial waters. BP had injected at least 770,000 gallons of chemical dispersants directly into the damaged wellhead and otherwise directed its contractors, including Airborne Support (ASI) to apply considerable amounts of chemical dispersants directly onto the territorial waters of Florida. These negligent, reckless and wanton activities constitute tortious conduct which occurred in the territory of Florida, and created new chemical moieties and physical states of the hazardous mixed chemicals.

377. Upon information and belief, ASI and ASI International, directed by BP, knowingly and willfully released toxic and harmful chemical dispersants and/or other toxic chemicals into the Territorial Waters of Florida, which alone and in combination with the Macondo chemicals began damaging the natural environment and threatening both marine and human life and thereby causing economic loss to the business and industry and to Plaintiffs who are economically dependent on those waters.

378. The chemical dispersants released into the Gulf and Florida territorial waters and shores at the direction of BP contain hazardous and toxic substances and have been reported to be harmful to both human health and the marine environment.

47

The chemical dispersants are designed to interact with spilled oil which then sinks below the surface, where these solubilized amalgans are more available for exposure to all marine enviornments.

379.    The use of chemical dispersants introduces toxic pollutants to a larger portion of the marine environment than when using mechanical oil collection methods, since the dispersant causes oil to become suspended in the water column available to be moved by subsurface currents and tides, and deposited in the seafloor sediment…all places where it is more likely to be encountered and more readily available to be contacted and absorbed by marine life.

380.    On or about May 19, 2010, the U.S. Environmental Protection Agency (EPA) Administrator directed BP within 24 hours of issuance to identify and to change to chemical dispersants that are less toxic than those dispersants that BP had been using.  BP refused to comply and continued using dispersants of its choice.

381.    Defendant BP recklessly, willfully and/or wantonly failed to use ordinary care by electing to use chemical dispersants that are more toxic than others in the response efforts and thereby amplified the toxic effects on the marine environment and the damages to Plaintiffs.

382.    Defendants knew or should have known that the chemical dispersants used would increase toxicity and marine environment exposure of the oil and increase damages to Plaintiffs.

383.    The untested manner and unprecedented scale in which Defendants used dispersants on such a sheer volume of oil likely caused foreseeable negative

consequences. BP used the dispersants in a manner and quantity for which they were not designed, labeled or tested by injecting chemical dispersants directly at the wellhead approximately 5,000 feet below the surface.

384. Defendants knew or should have known that injecting dispersants at the wellhead had not previously been tested or used in this manner and had not been tested under similar conditions. Defendants failed to warn the public or ensure the safe use of these products.

385. Defendants also failed to ensure the dispersants' design was appropriate for the extreme conditions expected to be encountered during use by BP at the wellhead.

386. BP's decision to use chemical dispersants in such extreme conditions for which they were not designed likely resulted in the foreseeable negative consequence of preventing the oil from fully rising to the surface resulting in the formation of massive solubilized subsurface toxic plumes of amalgamated dispersed oil droplets and chemical dispersants at varying depths that are extremely slow to degrade due to the lack of oil consuming microbes in the deep marine environment. It also likely caused more toxic chemicals to penetrate into the shores, beaches and marshes of Florida in their dispersant solubilized state.

387. Upon information and belief, BP knew or should have known, as basic science suggests, that the direct injection of large amounts of chemical dispersants into the damaged wellhead at a depth of 5,000 feet would likely cause the formation of massive, deep water, subsurface oil plumes that would be extremely slow to degrade, and

subject to subsurface current movements to cause much greater exposure to the entire environment but BP continued with the application of dispersants in this manner to prevent the oil from reaching the surface in order to conceal the amount of oil being discharged from the Macondo well and obscure the true extent of the contamination being caused to the Gulf and marine environment.

388.   The number and magnitude of such plumes have been investigated and the severe environmental implications continue to be studied.  Large oil-dispersant plumes were confirmed at depths of 3,280 to 4,265 feet many miles from the wellhead of the Deepwater Horizon.  Studies have shown that these dispersant-hydrocarbon plumes are not degrading as expected and continue their slow ascent to the surface more than a year after BP's Macondo well was capped.

389.   Since these deep oil-dispersant plumes and other related hydrocarbon accumulations on the seafloor are not degrading and will continue to periodically surface from depth in a difficult to predict manner, it is probable that recurring significant damage to the shallower marine environment and continued oiling of the marshes and estuaries will persist for many years to come.

390.   Such results have resulted in marine life kills and will likely have long term impacts on the commercial and recreational fishing industries.  The full extent of these impacts has not yet been determined and may take years to assess, but preliminary evaluation suggests they will be severe.

391.   The amount of oil spilled, combined with the amount of dispersants applied in the Gulf of Mexico, immediately had significant acute effects on

the entire marine ecosystems of the Gulf on which Plaintiffs are economically dependent, and chronic negative effects are likely to be felt long after the oil and dispersants have degraded. Likely impacts include direct mortality from the chemicals, and indirect impacts that include reduction in reproduction, genetic disorders, increased susceptibility to disease, and likely enhanced pathogenicity of marine disease organisms.

392. Rowan Gould, Acting Director of the U.S. Fish & Wildlife Service, has stated that the Deepwater Horizon spill "is significant and in all likelihood will affect fish and wildlife across the Gulf, if not all of North America, for years if not decades . . . ."

393. The oil and dispersants that were discharged and released are extremely hazardous to marine life in the Gulf of Mexico. They are especially hazardous to marine life at the bottom of the food chain, including creatures such as plankton, shrimp, and crabs which are food for the finfish sought by fishermen.

394. These plankton, shrimp, and other marine creatures are vital to the entire marine ecosystem, and the damage already sustained by these tiny marine creatures threatens the entire marine species throughout the Gulf. The chemicals released into the Gulf have both direct and indirect impact to tourism and on the businesses of the Plaintiffs.

395. Due to impacts from the oil spill, Plaintiffs have seen greatly reduced business and have suffered loss of income, loss of business value, and loss of value to their real property.

396.     In an effort to stay viable and economically survive this disaster Plaintiffs have been forced to take financial steps to limit the effects of the disaster.

397.     Due to the toxic effect of the oil spill and dispersants on the fisheries of the Gulf of Mexico, now and in the future, the tourism and sales upon which Plaintiffs' businesses are dependent have been diminished, endangering the ability of Plaintiffs to operate or maintain their businesses.

398.     Despite increased business efforts combined with longstanding reputations for business savvy and competency, the stigma and effect of the spill has drawn fewer customers to the Gulf business locations of Plaintiffs.  More than a year after the well was capped Gulf Coast communities and waters proximate to Plaintiffs' businesses and properties continue to be awash in fresh oil with ongoing harmful effects with no end in sight.  Recovery efforts to repair the physical and stigma damages to Gulf waters have been inadequate and incomplete, causing economic loss to these Plaintiffs who are financially dependent on healthy marine environments.

399.     Due to the oil spill disaster, Plaintiffs' customers have taken their business to other non-gulf regions and consequently are unlikely to return to the Gulf Coast.  Formerly regular customers simply do not want to visit and spend their money in the Plaintiffs' Gulf neighborhoods where the natural marine bounty has been and continues to be damaged.

400.     Due to the unprecedented scope of the disaster and the as yet unknown impact on future marine generations of wildlife, it may take years to assess the full extent of the devastation to the marine life in the Gulf and it may be decades before

the marine environment is able to completely recover. Thus far the impact of the oil and other chemicals discharged into the Gulf during the Deepwater Horizon oil spill disaster has been devastating to marine life upon which Plaintiffs' businesses rely.

401. The discharge of crude oil from the Macondo well and the spraying of dispersants into the Gulf of Mexico and Florida territorial waters has caused and will continue to cause a direct and proximate loss of revenue, profits and/or loss of earning capacity to Plaintiffs. The fact that the reputation of the geographic areas in which Plaintiffs operate has been severely tainted, Plaintiffs have experienced and continue to experience significant business damage due to a significant decrease in clients and increase in cancellations of business opportunity with the likely long term and possibly permanent loss of customers and potential customers.

## CLAIMS FOR RELIEF

### Claims Under General Maritime Law

#### *COUNT I*

**NEGLIGENCE, GROSS NEGLIGENCE AND WILLFUL MISCONDUCT OF BP**

402. Plaintiffs reallege and reaver each and every allegation set forth in all preceding paragraphs as fully set forth herein and further state:

403. Plaintiffs are financially dependent on the condition of the waters of Florida and the Gulf of Mexico and the marine life contained therein; thus when marine life and the quality of Gulf waters perish, so does Plaintiffs' business and income.

404. The BP Defendants owed the Plaintiffs a duty to refrain from action that causes damage to the Gulf waters and the marine ecosystem of Florida upon which Plaintiffs' properties and income are financially and economically dependent.

405. BP owed and breached duties of reasonable care to ensure the safety of their operations and guard against and prevent the risk of a blowout an oil spill and its effects in the Gulf, in Florida territorial waters and of Florida shores.

406. BP owed and breached duties of ordinary and reasonable care with respect to the design and manufacture of the BOP and float collar used on the Macondo well.

407. BP was injecting its dispersants at the wellhead and breached a duty of ordinary and reasonable care with respect to the design, manufacture and use of the chemical dispersants.

408. At all times BP controlled and directed the response and recovery efforts and failed to exercise reasonable care in the operation, design, implementation and execution of the response efforts, including the injection of dispersants at the wellhead. Additionally, as the chemicals entered Florida territorial waters, BP owed a duty, and failed the duty, to exercise reasonable care in response efforts, including timely mitigating of the damage caused and stopping the spread of the oil onto and around Florida waters, shores and properties.

409. Defendant BP recklessly, willfully and/or wantonly failed to use reasonably safe chemical dispersants in reasonably safe locations and quantities in

response efforts and thereby exacerbated the contamination in the Gulf of Mexico and Florida and resulting injury to Plaintiffs.

410. The incidents described above that caused damage to Plaintiffs, were a proximate result of the negligence, fault, gross negligence, and/or willful misconduct of BP through their agents, servants, employees, contractors and other persons or entities for whose conduct Defendant is responsible, which are more particularly described as follows:

a.) Failing to operate the Deepwater Horizon in a safe manner;

b.) Operating the Deepwater Horizon in such a manner that a fire and explosion occurred onboard, causing it to sink and resulting in an oil spill;

c.) Failing to properly inspect the Deepwater Horizon to assure that its equipment and personnel were fit for their intended purpose;

d.) Failing to promulgate, implement, and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon, which, if they had been promulgated, implemented, and enforced, would have averted the fire, explosion, sinking, and oil spill;

e.) Failing to adhere to applicable safety, construction, and/or operating regulations, including, but not limited to, regulations designed to prevent the fire, explosion, and discharge of oil;

f.) Failing to properly design and/or engineer the well, drilling program, cementing program, mud program and completion program;

g.) Failing to take appropriate action to avoid or mitigate the accident;

h.) Negligent implementation of policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

i.) Failing to properly train their employees;

j.) Failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;

k.) Failing to timely warn;

l.) Failing to provide all reasonable cooperation and assistance requested by the responsible officials in connection with the clean-up and removal activities;

m.) Failing to ensure that adequate plans, equipment, safeguards, resources and technology were readily available to prevent and/or mitigate the effects of the loss of control of a well and unfettered discharge of oil into the Gulf of Mexico;

n.) Failing to timely bring the oil release under control, to prevent the spill from migrating throughout the Gulf of Mexico;

o.) Failing to provide appropriate accident prevention equipment;

p.) Failing to ensure that the casing and float collar were properly designed and installed;

q.) Providing BOP's that failed to properly function;

r.) Failing to ensure that BOP's would work as intended;

s.) Failing to test the BOP's to ensure that they would operate properly;

t.) Recklessly altering the BOP's and failing to use them in a safe manner;

u.) Failing to conduct well cementing operations properly;

v.) Failing to employ alternative cementing operations in light of known problems with the actual cementing operations employed;

w.) Failing to have a reasonably adequate well control plan and necessary equipment in case of a loss of the well;

x.) Failing to exercise reasonable care in the design and implementation of both well control efforts and response and recovery efforts;

y.) Failing to insure that adequate plans, equipment, safeguards resources, and technology were available to prevent or mitigate the quantity of hazardous chemicals that would enter into and effect Florida territorial waters and Florida real property.

z.) Recklessly using dispersants so as to cause the greatest migration and widest potential for environmental toxic exposures and effects throughout the Gulf including Florida territorial waters and real property.

411. Defendants were aware at all times relevant hereto that their operations and the acts and/or omissions described above created an unreasonable risk of harm and knew that catastrophic environmental destruction and economic loss would occur if the well being serviced by the DEEPWATER HORIZON were to blow out.

412.     Defendants were indifferent to this risk of harm.  Defendants intentionally failed to perform the duties owed to Plaintiffs in reckless disregard of the consequences their actions and/or omissions would have on Plaintiffs.

413.     Moreover, Defendants acted intentionally with knowledge that their acts would probably result in injury or in such a way as to allow an inference of a reckless disregard of the probable consequences of their acts.  Therefore, Defendants are also liable to Plaintiffs for gross negligence and/or willful misconduct.

414.     Plaintiffs have suffered and will continue to suffer significant economic damages and loss of business due to the impacts and the stigma caused by the impacts, on the marine environment, fish and shellfish populations, as well as to the Gulf waters from the oil spill disaster and related response efforts.

415.     The oil spill and subsequent response and recovery efforts that have caused damage and continue to cause damage to Plaintiffs was proximately caused by Defendants' negligence, gross negligence and/or willful misconduct.

416.     Further, upon information and belief, the oil spill was proximately caused by the Defendants' violation of applicable federal safety, construction, or operating regulations and/or by violations of such regulations by an agent or employee of the Defendants and/or a person acting pursuant to a contractual relationship with Defendants.

417.     Defendants had a duty to conform their conduct in such a manner as to assure that a blowout would not occur, that the Deepwater Horizon would not be destroyed and sink, that an uncontrolled oil spill would not result and that adequate well

control and response measures would exist in case of emergency pursuant to federal and Florida law.

418.    Defendants failed to conform their conduct to the appropriate legal standard, thereby breaching their duty to assure that a blowout would not occur, that the Deepwater Horizon would not be destroyed and sink, that an uncontrolled oil spill would not result and that adequate well control and response measures would exist and be properly implemented in case of emergency pursuant to federal and Florida law.

419.    Defendants' substandard conduct in failing to prevent the blowout, the ensuing destruction and sinking of the Deepwater Horizon, and the uncontrolled discharge of oil from the Macondo well into the Gulf of Mexico and Florida waters pursuant to federal and Florida law was the cause-in-fact of the injuries, harm, and damages suffered by the Plaintiffs.

420.    Defendants' substandard conduct in failing to prevent and/or contain the blowout that resulted in the sinking of the Deepwater Horizon and the subsequent oil spill from the Macondo well was the legal cause of the Plaintiffs' injuries, harm, and damage.

421.    In addition, and/or in the alternative, the blowout, fire, explosion, destruction of the Deepwater Horizon and ensuing oil spill were caused by defective equipment and would have been prevented by non-defective equipment, including the BOP and float collar, which were in the care, custody, and control of the Defendants and over which the Defendants had *garde*. Defendants knew or should have known of these defects and Defendants are therefore liable for the defects.

422.  BP has taken responsibility for the oil spill and cleaning up the oil spill, as former BP Chief Executive, Tony Hayward, had issued a statement on the BP website that BP is "… taking full responsibility for the spill and we will clean it up." BP has therefore admitted its liability for the oil spill.

423.  BP's duties are non-delegable.

424.  It was foreseeable that the Defendants' actions and/or omissions, resulting in the blowout of the Macondo well, the sinking and destruction of the Deepwater horizon, and the ensuing uncontrolled oil spill from the Macondo well, would proximately cause the damage, injury, and harm that Plaintiffs did suffer and will continue to suffer, as alleged herein.

425.  The injuries to the Plaintiffs were also caused by or aggravated by the fact that Defendants failed to take reasonably necessary actions to mitigate the dangers associated with their operations.

## Claims Under The Oil Pollution Act As to BP Defendants

### *COUNT II*

**(Economic Loss)**

426.  Plaintiffs reallege and reaver each and every allegation set forth in all preceding paragraphs as fully set forth herein and further state:

427.  Under the Oil Pollution Act, 33 U.S.C. §2701, *et seq* ("OPA"), "each responsible party for a vessel or facility…from which oil is discharged…is liable for removal costs and damages", including "the loss of profits or impairment of earning

capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant." 33 U.S.C. §2702.

428.    A responsible party in the case of a vessel is any person owning, operating, or demise chartering the vessel. 33 U.S.C. §2701(32)(A). A responsible party for an offshore facility is the lessee or permittee of the area in which the facility is located. 33 U.S.C. 33 U.S.C. §2701(32)(C).  A lessee is any "person holding a leasehold interest in an oil or gas lease on lands beneath navigable waters (as that term is defined in section 1301(a) of Title 43) or on submerged lands of the Outer Continental Shelf, granted or maintained under applicable State law or the Outer Continental Shelf Lands Act (43 U.S.C. 1331 et seq.)."  33 U.S.C. §2701(16).

429.    For purposes of determining the responsible parties for a mobile offshore drilling unit, it is first deemed to be a tank vessel and then treated as an offshore facility for excess liability.  33 U.S.C. §2704(b) (1)&(2).

430.    At all pertinent times herein, BP leased the Deepwater Horizon. BP was also a lessee in the Mississippi Canyon, Block 252 lease granted by the United States Mineral Management Services (hereinafter "MMS") under which the Macondo well was drilled by the Deepwater Horizon.  BP was the designated operator for said lease.

431.    The United States Coast Guard identified BP as responsible party pursuant to OPA.  Thus, BP's strictly liable under OPA for economic damages that resulted from the oil spill.

432. Defendant BP is not entitled to limit its liability under Section 2704(a) of OPA because the oil spill disaster was proximately caused by its gross negligence, willful misconduct, or violation of applicable safety, construction or operating regulations as alleged above. Additionally, BP explicitly waived the right to raise the statutory limitation on liability under OPA.

433. As a result of the oil spill and the resulting damages to the natural resources in the Gulf of Mexico, Plaintiffs have sustained and will continue to sustain a loss of profits and/or impairment of earning capacity, as alleged above.

434. As a result of the oil spill and the resulting damage to the marine environment in the Gulf of Mexico, Plaintiffs are entitled to damages pursuant to OPA, Section 2702(b)(2)(E), which allows for "[D]amages equal to loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant."

435. It was foreseeable that a massive oil spill in the Gulf of Mexico would cause economic harm to Plaintiff's businesses in Florida, such as Plaintiffs'.

436. Plaintiffs have satisfied all of the administrative requirements of 33 U.S.C. §2713(a) & (b), by the submission of all claims brought herein to the Gulf Coast Claims Facility (hereinafter "GCCF") and/or to BP. Neither BP nor the GCCF has timely paid Plaintiffs' claims and so Plaintiffs filed this complaint.

437. Plaintiffs are entitled to recover from BP for economic damages occasioned as a result of the oil spill in amounts to be determined by the jury.

**Strict Liability Pursuant to The Florida Pollutant Discharge Prevention
And Control Act Fla. Stat. §376.011, et seq. as to BP Defendants**

*COUNT III*

438.　Plaintiffs reallege each and every allegation set forth in all preceding paragraphs as if fully restated here.

439.　At all relevant times, Defendant, BP, had a statutory duty to Plaintiffs to maintain and operate the Deepwater Horizon and the Macondo well so as to not create or sustained hazardous conditions due to the discharge of pollutants as defined by the Florida Pollutant Discharge Prevention and Control Act (the "FPDPCA"), Fla. Stat. §376.011, *et seq*.

440.　Pursuant to Section 376.041 of the FPDPCA, the discharge of pollutants into or upon any coastal waters, estuaries, tidal flats, beaches, and lands adjoining the seacoast of the State of Florida is prohibited. The FPDPCA holds "Responsible Parties" liable for the discharge of pollutants in violation of its provisions.

441.　Pursuant to Section 376.031(20)(a) and (c) of the FPDPCA, BP is a "Responsible Party" and therefore liable under the FPDPCA, because it was an operator of the Deepwater Horizon and a lessee of the area where the Deepwater Horizon and the Macondo well were located. BP was designated as a "Responsible Party" by the U.S. Coast Guard under the Oil Pollution Act of 1990, 33 U.S.C. §274.

442.　At all relevant times, Defendants breached its statutory duty to Plaintiffs by discharging, or allowing to be discharged, crude oil and other pollutants and hazardous substances into the Gulf of Mexico and then negligently allowing or causing

the massive oil spill to migrate into Florida's marine and coastal waters and shores in violation of the FPDPCA. Once present there, Defendants added chemical dispersants onto the oil, creating and enlarging the pollutant hazards and their movement into Florida territorial waters and real property.

443. Defendant, BP is liable under the FPDPCA for the discharge of pollutants or hazardous substances into or upon the surface waters of the state and lands, and failing to obtain required permits before discharging pollutants and hazardous substances into the surface waters of the state and lands. Fla. Stat. §376.302.

444. Defendant is strictly liable to Plaintiffs under the Act, §376.205, which provides in pertinent part:

> … any person may bring a cause of action against a responsible party in a court of competent jurisdiction for damages, as defined in §376.031, resulting from a discharge or other condition of pollution covered by §376.031-376.21. In any such suit, it shall not be necessary for the person to plead or prove negligence in any form or manner. Such person need only plead and prove the fact of the prohibited discharge or other pollutive condition and that it occurred.

445. The Florida Act provides that "[e]ach responsible party is liable to any affected person for all damages as defined in Section 376.031, excluding natural resource damages, suffered by that person as a result of the discharge." Fla. Stat. §376.12(5).

446. The Florida Act defines "damage" as "the documented extent of any destruction to or loss of any real or personal property…including all living things except human beings, as the direct result of the discharge of a pollutant. Fla. Stat. §376.031(5).

447. The Florida Act defines "persons" as "any individual, partner, joint venture, corporation; any group of the foregoing, organized or united for a business purpose; or any governmental entity, Fla. Stat. §376.031(4).

448. As "persons" under the Florida Act, Plaintiffs are entitled to damages for the destruction to or loss of any real or personal property.

449. Defendant, BP is not entitled to a limitation or defense for the costs of removal, containment, and/or abatement of the Spill because the Spill resulted from their willful or gross negligence or willful misconduct, and/or the violation of applicable federal and/or state safety, construction or operating regulations and/or rules.

450. The immediate discharge from the Spill occurred into waters outside the territorial limits of Florida; however, additional tortious acts committed by BP and parties over whom it exercised control in lands and waters within the territorial limits of Florida have directly affected and contributed to cause the migration and discharge into Florida territorial waters and shores of the subject pollution and are reasonably expected to continue. The spill and subsequent dispersant/petroleum amalgams, therefore, are a prohibited discharge and/or condition of pollution under the FPDPCA.

451. Pursuant to Section 376.205, Plaintiffs are entitled to reasonable attorney's and expert witness fees.

WHEREFORE, Plaintiffs, demand judgment against Defendants in an amount which will adequately compensate them for actual damages herein. In addition, Plaintiffs seek punitive damages against Defendants, the amount of said punitive damages to be set by a jury. Plaintiffs also seek pre-judgment and post-judgment interest,

costs, attorney's fees, along with any other damages available, and demands trial by jury of all issues triable as of right by jury.

### Negligence of AIRBORNE SUPPORT INTERNATIONAL, INC.,
#### (Hereinafter referred to as "ASI")

### *COUNT IV*

452.    Plaintiffs reallege and reaver each and every allegation set forth in all preceding paragraphs as fully set forth herein and further state:

453.    ASI owed the Plaintiffs a duty, and failed that duty, to refrain from conduct that causes damage to the Gulf waters and the marine ecosystem of Florida upon which the Plaintiffs' businesses, properties and incomes are financially and economically dependant.

454.    ASI owed and breached duties of reasonable care to ensure the safety of their operations and to guard against and prevent injury to the environments, habitats, waters and land into which their activities in spraying chemicals occurred.

455.    ASI owed a duty and failed in their duty to know what products they were spraying or applying onto the waters of the Gulf of Mexico and Florida territorial waters and real property and to know the likely impact that their activities would have upon the enviornments on which they were spraying their chemicals. ASI applied the chemicals and dispersants without regard to the likely short and long term impacts likely to be caused by the quantity and geographic broad scope of their chemical applications onto hydrocarbons.

456.     ASI owed a duty and breached the duty to spray chemicals onto the waters of the Gulf of Mexico including Florida territorial waters and real property in a way which was consistent with their product labels.

457.     ASI owed a duty, and breached the duty, to warn of the effects of their spraying activities to Plaintiffs and all those who would be potentially injured or damaged by their activities in a time frame which would have allowed Plaintiffs to attempt to stop or reduce the quantity or location of the spraying activities, or alternatively to devise plans to mitigate or prevent damage to the Gulf waters or properties which affect their properties and or businesses.

458.     ASI owed a duty to reject spraying huge quantities of dispersants onto the Gulf and Florida territorial waters in order to protect the Gulf ecosystem on which Plaintiffs rely for their economic benefit. ASI knew or should have known that they would be spraying quantities of chemicals over volumes of water in ways which had never been tested for affect. ASI breached that duty of reasonable care.

459.     ASI, in concert with the BP defendants, committed tortious acts in Florida territorial waters which polluted Florida territorial waters and real property with dispersed and solubilized oil/dispersant molecular amalgams. Due to the tortuous spraying of dispersants onto hydrocarbons in Florida territorial waters, these molecules were dispersed throughout Florida territorial waters at all levels of the Gulf of Mexico waters, and traveled to the sea floor and into Florida estuaries, tidal flats, bays, and onto and into the soils of Florida real property. In the physical state caused by the use of the dispersants in Florida territorial waters, the toxic chemical amalgams became more bio-

available and caused harmful contact to marine organisms at all levels of that Florida ecosystem. The harmful contact likely caused, and is causing, injury to the chain of living organisms, both plant and animal, from the sea floor through the water profile to the surface, into tidal regions of Florida territorial waters and onto and into Florida real property. Because of it solubilized state, the oil/dispersant amalgam has penetrated into the sediments and soils of Florida properties such that it has migrated inland above the high water marks of the shores and penetrated many feet deep into those shores and real properties. Superficial surface clean up is ineffective in restoration of this type of damage.

460. ASI owed a duty and failed in its duty of exercising reasonable care in the use of dispersants repetitiously in the same and contiguous areas, and in the type of the dispersants used.

461. ASI owed a duty and failed in that duty to mitigate the damages caused by the negligent activities in order to prevent its harm or to reduce the quantity of hazardous chemicals that would enter into and effect the Gulf of Mexico and Florida territorial waters and real property.

462. As a direct and proximate result of the Defendants' ASI's negligence, Plaintiffs have each suffered and will continue to suffer significant economic and other damages in excess of $75,000.00 and are entitled to recover monetary damages, including but not limited to, diminution of value to business, diminished value of real and personal property, loss of income and revenue, recoupment of expenses used to mitigate and support their business once injured, loss of business goodwill, stigma damages, loss

of customer base, and all other consequential and incidental damages resulting from Defendants' conduct. The BP and ASI defendants are liable jointly and severally for Plaintiffs' damages resulting from Defendants' negligence.

WHEREFORE, Plaintiffs, demand judgment against Defendants in an amount which will adequately compensate them for actual damages herein. In addition, Plaintiffs seek punitive damages against Defendants, the amount of said punitive damages to be set by a jury. Plaintiff also seek pre-judgment and post-judgment interest, costs, attorney's fees, along with any other damages available, and demand trial by jury of all issues triable as of right by jury.

Dated this ___24th___ day of ___February___, 2012.

Respectfully submitted,


By:  s/ Robert J. McKee_____
**ROBERT J. McKEE (FL Bar 972614)**
Email:  :rmckee@krupnicklaw.com
The Law Offices of Krupnick,
Campbell, et al
12 Southeast 7th Street - #801
Fort Lauderdale, Florida 33301
Telephone: (954) 763-8181 #8619
Facsimile: (954) 763-8292
Attorneys for Plaintiffs

**STUART H. SMITH (17805)**
Email:  ssmith@smithstagg.com
SMITH STAGG, LLC
65 Canal Street, Suite 2850
New Orleans, Louisiana  70130
Telephone: (504) 593-9600
Facsimile:  (504) 593-9601
Attorneys for Plaintiffs

%JS 44 (Rev.

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

121 DUVAL COMPANY; 126 DUVAL COMPANY d/b/a DUVAL GROUP, INC.; 135 DUVAL COMPANY; et al.

**(b)** County of Residence of First Listed Plaintiff    Monroe
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Robert J. McKee, Esquire, of Krupnick Campbell Malone Buser Slama Hancock Liberman & McKee, P.A., 12 Southeast Seventh Street, Suite 801, Fort Lauderdale, Florida 33301  Tel: 954-763-8181

## DEFENDANTS

BP EXPLORATION & PRODUCTION INC.,
BP AMERICA PRODUCTION COMPANY,  BP P.L.C.,

County of Residence of First Listed Defendant    Foreign
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☑ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question
(U.S. Government Not a Party)

☑ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☑ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC  3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893  Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to  Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed- (see VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO   b) Related Cases ☑ YES ☐ NO

JUDGE                                      DOCKET NUMBER   4:12-cv-10017

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):
28 U.S.C. 1332

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
/s/ Robert J. McKee, Esquire

DATE
February 25, 2012

**FOR OFFICE USE ONLY**

AMOUNT          RECEIPT #          IFP